UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DON VALLANCE,

       Petitioner,

                                      CASE NO. 2:06-CV-15083

    v.                              JUDGE GEORGE CARAM STEEH
                                       MAGISTRATE JUDGE PAUL J. KOMIVES

DOUG VASBINDER,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.   RECOMMENDATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
II.  REPORT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
   A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
   B.   *Factual Background Underlying Petitioner's Conviction*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
   C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
   D.   *Standard of Review*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
   E.   *Analysis*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
      1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
      2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
          a.  Verdict and Sentencing on Methamphetamine Laboratory Conviction . . . . . . . . .  10
          b.  Denial of Counsel at Critical Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
   F.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

\*       \*       \*       \*       \*

I.   <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.   <u>REPORT</u>:

A.   *Procedural History*

     1.   Petitioner Robert Don Vallance is a state prisoner, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

2.     On August 3, 2001, petitioner was convicted of possession of methamphetamine, MICH. COMP. LAWS § 333.7403(2)(b); operating or maintaining a methamphetamine laboratory near a specified place, MICH. COMP. LAWS § 333.7401c(2)(d); maintaining a drug house, MICH. COMP. LAWS § 333.7405(1)(d); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the St. Joseph County Circuit Court.  On May 24, 2002, he was sentenced to a term of concurrent terms of 15-35 years' imprisonment on each of the methamphetamine possession and laboratory convictions and 4-15 years' imprisonment on the maintaining a drug house conviction, all consecutive to a mandatory two year term of imprisonment on the felony-firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     DEFENDANT WAS DENIED DUE PROCESS OF LAW, HIS RIGHT TO BE PRESENT AT TRIAL, HIS RIGHT TO PRESENT A DEFENSE, AND HIS RIGHT TO TESTIFY ON HIS OWN BEHALF WHEN THE TRIAL COURT PROCEEDED WITH HIS JURY TRIAL IN HIS ABSENCE, U.S. CONST. AMENDS. V, VI, XIV; CONST 1963, ART 1, § 20.

II.    THE PROSECUTION FAILED TO PRODUCE SUFFICIENT EVIDENCE OF TO [SIC] SUSTAIN JURY'S VERDICTS FINDING DEFENDANT GUILTY OF OPERATING/MAINTAINING A METHAMPHETAMINE LABORATORY NEAR SPECIFIED PLACES, . . . MAINTAINING A DRUG HOUSE, . . . AND FELONY FIREARM.

III.   DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL UNDER THE MICHIGAN AND FEDERAL CONSTITUTIONS, WHERE THE PROSECUTOR ENGAGED IN IMPROPER AND HIGHLY PREJUDICIAL ARGUMENT TO THE JURY WHEN HE VOUCHED FOR THE TRUTHFULNESS OF HIS KEY POLICE OFFICER WITNESS, NATALIE THOMPSON.

IV.    DEFENDANT IS ENTITLED TO RESENTENCING WHERE THE SIR WAS ERRONEOUSLY SCORED FOR POSSESSION OF METHAMPHETAMINE WITH INTENT TO DELIVER, RATHER

THAN THE OFFENSE THAT DEFENDANT WAS CONVICTED OF, SIMPLE POSSESSION OF METHAMPHETAMINE, WHERE THE COURT IMPROPERLY SCORED OFFENSE VARIABLE 19, AND WHERE DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT.

The court of appeals found no merit to petitioner's claims challenging his convictions. With respect to petitioner's sentencing claim, the court of appeals concluded that the trial court had erred in sentencing petitioner on the original charge of possession with intent to deliver methamphetamine, because the charge had been amended at trial to one of simple possession, and this was the charge upon which petitioner was convicted. The court therefore remanded for resentencing on this count. *See People v. Vallance*, No. 242163, 2003 WL 22359528 (Mich. Ct. App. Oct. 16, 2003) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Vallance*, 470 Mich. 859, 679 N.W.2d 701 (2004).

5.      Petitioner was resentenced on July 15, 2005. The court reimposed the initially imposed sentences on the methamphetamine laboratory, maintaining a drug house, and felony-firearm convictions, and imposed a sentence of 5-20 years' imprisonment on the methamphetamine possession conviction.[1]

6.      Meanwhile, on April 8, 2005, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

---

[1]Neither party mentions petitioner's resentencing, nor is the transcript of the resentencing proceeding included in the Rule 5 materials filed by respondent. This information is taken from the Michigan Department of Corrections's Offender Tracking Information System (OTIS) website, which lists the date of sentence and sentence imposed for each conviction.

I.      DEFENDANT WAS DENIED DUE PROCESS OF LAW, EFFECTIVE ASSISTANCE OF COUNSEL AT A CRITICAL STAGE OF TRIAL, WHEN DEFENSE COUNSEL FAILED TO HAVE COUNT 2 CLARIFIED BEFORE THE JURY WAS DISMISSED.  U.S. CONST, AMEND VI.

II.     DEFENDANT WAS DENIED DUE PROCESS OF LAW, EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING, WHERE DEFENSE COUNSEL FAILED TO OBJECT TO COUNT TWO ON THE VERDICT FORM AND ALLOWED THE COURT TO SENTENCE DEFENDANT TO A STATUTE THAT PRESCRIBES MORE THAN ONE TYPE OF CONDUCT WITH PENALTIES THAT VARY DEPENDING UPON WHAT ACT.

On May 18, 2005, the trial court denied petitioner's motion for relief from judgment, concluding that "[a]fter a thorough review of the file and record in this case, no error is revealed." *People v. Vallance*, No. 01-10550 FH, at 1 (St. Joseph County, Mich., Cir. Ct. May 18, 2005).  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Vallance*, 476 Mich. 856, 718 N.W.2d 364 (2006); *People v. Vallance*, No. 263158 (Mich. Ct. App. Jan. 23, 2006).

7.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on November 14, 2006.  As grounds for the writ of habeas corpus, he raises essentially the claims that he raised in his postconviction motion for relief from judgment, as well as a claim that his appellate counsel was ineffective.

8.      Respondent filed his answer on May 14, 2007.  He contends that petitioner's claims are barred by his procedural default in the state courts.

9.      Petitioner filed a reply to respondent's answer on June 20, 2007.

B.      *Factual Background Underlying Petitioner's Conviction*

4

Petitioner's conviction arises from the discovery of methamphetamine and various tools and substances used in the manufacture of methamphetamine in his bedroom, in the home of Amanda Ready.  As summarized by the Michigan Court of Appeals:

> In the instant case, the following items were found in defendant's bedroom: a Pyrex flask, commonly used in the manufacture of methamphetamine; acetone, which can be used to extract ephedrine from pills or used as a cutting agent; black iodine crystals, one of the chemicals or components used to manufacture methamphetamine; five Pyrex pans; a clear glass pan with suspected iodine crystals; a one-gallon container of muriatic acid; five 12-ounce bottles of gas line antifreeze; a one-gallon container of clean strip acetone; one pound of iodine crystals; plastic tubing with a funnel; and one mason jar with layered pink fluid. Trooper James Coleman opined that the chemicals and laboratory equipment were components of a methamphetamine operation, and that the only missing ingredients were red phosphorus and an ephedrine source. Coleman testified that defendant's house was within 160 feet of one nearby residence, and within 209 feet from another nearby residence. Officer Natalie Thompson testified that defendant told her that he and Amanda Ready had attempted to "cook" methamphetamine two weeks earlier, but were unsuccessful because they did not have high quality red phosphorus, and that they were waiting for red phosphorus that they had ordered before attempting another "cook."

*Vallance*, 2003 WL 22359228, at *2, slip op. at 2-3.  With respect to the methamphetamine possession conviction, Detective Richard Hiscock testified that the small amount of methamphetamine recovered (.23 grams) was likely for personal use, and thus the prosecution moved to amend the charge from one of possession with intent to distribute to one of simple possession.

During trial, petitioner absconded.  After providing an opportunity for the police to locate petitioner, and after hearing testimony from the police regarding their efforts to locate petitioner, the trial court concluded that petitioner had voluntarily absented himself from the proceedings and waived his right to be present.  The court therefore permitted the trial to proceed in petitioner's absence.  Petitioner was convicted on all of the charges.  Petitioner was subsequently arrested seven

5

months later in Columbia, Tennessee.

C.      *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. Although the Michigan Supreme Court and Michigan Court of Appeals denied petitioner's applications for leave to appeal based on petitioner's "failure to meet the burden of establishing entitlement to relief" under MICH. CT. R. 6.508(D), those courts did not explicitly cite to the procedural default portion of that rule contained in Rule 6.508(D)(3). The trial court did not purport to rely on a procedural default, instead finding as a substantive matter that the record revealed no error. The Sixth Circuit has provided conflicting guidance on whether, in these circumstances, the appellate courts' citation to Rule 6.508(D) is sufficient to invoke the procedural bar portion of that rule set forth in paragraph (D)(3). *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) *and Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2003), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004).

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also, Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further

6

judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the

conflicting guidance provided by the Sixth Circuit, and the fact that (as explained below)

petitioner's claims are without merit, the Court should resolve the claims on the merits without

addressing the procedural default issue.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

7

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Analysis*

Petitioner raises claims that his trial counsel was ineffective at trial and at sentencing, and that his appellate counsel was ineffective on appeal, for failing to challenge his sentence on the methamphetamine laboratory conviction.  Petitioner also contends that he was denied counsel at a critical stage of the proceedings.  For the reasons that follow, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687. These two components are mixed  questions of law and fact.  *Id.* at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

9

followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. With respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

2.    *Analysis*

a. *Verdict and Sentencing on Methamphetamine Laboratory Conviction*

With the exception of the denial of counsel at a critical stage claim addressed below, all of petitioner's ineffective assistance of counsel claims relate to his conviction and sentencing on the methamphetamine laboratory conviction. Specifically, petitioner contends that the jury verdict form did not authorize a sentence on the basis that he operated a methamphetamine laboratory within 500 feet of a specified place. Because this underlying substantive argument is without merit, petitioner cannot show that counsel was ineffective for failing to object to the verdict form or at

10

sentencing, or that appellate counsel was ineffective for failing to raise this issue on appeal.

The statute under which petitioner was tried and convicted for provides, in relevant part, that "A person shall not . . . [o]wn or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402." MICH. COMP. LAWS § 333.7401c(1)(b). The statute goes on to provide a series of graduated punishments based on the circumstances or location of the § 333.7401c(1)(b) violation:

> (2) A person who violates this section is guilty of a felony punishable as follows:
> (a) Except as provided in subdivisions (b) to (f), by imprisonment for not more than 10 years or a fine of not more than $100,000.00, or both.
> (b) If the violation is committed in the presence of a minor, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.
> (c) If the violation involves the unlawful generation, treatment, storage, or disposal of a hazardous waste, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.
> *(d) If the violation occurs within 500 feet of a residence, business establishment, school property, or church or other house of worship, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.*
> (e) If the violation involves the possession, placement, or use of a firearm or any other device designed or intended to be used to injure another person, by imprisonment for not more than 25 years or a fine of not more than $100,000.00, or both.
> (f) If the violation involves or is intended to involve the manufacture of a substance described in section 7214(c)(ii), by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

MICH. COMP. LAWS § 333.7401c(2) (emphasis added) (footnoted omitted).

There is no question, and petitioner does not dispute, that he was specifically charged with possessing laboratory equipment used in the manufacture of methamphetamine within 500 feet of a residence under § 333.7401c(2)(d). Nor is there any question that the prosecution presented

evidence that petitioner's possession of the laboratory equipment occurred within 500 feet of a residence. At trial, State Police Trooper James Coleman "testified that [petitioner's] house was within 160 feet of one nearby residence, and within 209 feet from another nearby residence." *Vallance*, 2003 WL 22359528, at *2, slip op. at 2. Finally, there is no question that the jury was properly instructed on the elements of the offense, including that the prosecution prove beyond a reasonable doubt that the possession of the laboratory equipment occurred within 500 feet of a residence. *See* Trial Tr., Vol. IV, at 57 ("In Count 2, the defendant is charged with a separate crime of possession of a chemical or laboratory equipment to be used for the purpose of manufacturing methamphetamine. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt: . . . Fourth, that the defendant possessed the chemical or equipment within five hundred feet of a residence.").

Despite these facts, petitioner contends that he was not properly convicted of and could not properly be sentenced for possessing the methamphetamine chemicals or equipment within 500 feet of a residence under § 333.7401c(2)(d) because the verdict form given to the jury set forth only the base-level crime under § 333.7401c(1)(b) and (2)(a). The verdict form, attached as Exhibit 1 to petitioner's application, is titled "Form of the Verdict" and instructs: "You may only return one verdict for each charge. Please mark only one box for each count on this form." With respect to the laboratory count, the form provides, "COUNT 2 – POSSESSION OF A CHEMICAL OR LABORATORY EQUIPMENT TO BE USED FOR THE PURPOSE OF MANUFACTURING METHAMPHETAMINE," followed by lines for a "Not Guilty" and "Guilty" verdict. Based on the language of this form, petitioner contends that he was not found guilty of possessing the laboratory equipment with 500 feet of a residence, and could not be sentenced to the enhanced penalty

12

contained in § 333.7401c(2)(d).  He therefore argues that trial counsel was ineffective for failing to object to the verdict form and at sentencing, and that appellate counsel was ineffective for failing to raise this claim on appeal.  The Court should conclude that counsel were not ineffective, because the predicate for petitioner's claim–that he was not properly convicted of the offense set forth in § 333.7401c(2)(d)–is without merit.

    "The federal standard is that 'the form of the general verdict is sufficient if it indicates the intention of the jury.'" *Wilwording v. Swenson*, 326 F. Supp. 1145, 1150 (W.D. Mo. 1970) (quoting *Tapley v. United States*, 353 F.2d 786, 786-87 (5th Cir. 1965)).  As the Michigan Supreme Court has explained, "[t]he written form of the verdict should not be exalted over the substantive intent of the jury. . . . [T]herefore, . . . a jury verdict is not void for uncertainty if the jury's intent can be clearly deduced by reference to the pleadings, the court's charge, and the entire record." *People v. Rand*, 397 Mich. 638, 643, 247 N.W.2d 508, 510 (1976).  Here, the jury's intent can be "clearly deduced" from the record.  As noted above, there is no question that petitioner was charged with the enhanced crime set forth in § 333.7401c(2)(d), that the prosecution presented evidence sufficient to sustain the within-500-feet-of-a-residence element of this crime, or that the jury was properly instructed on the elements necessary to establish the crime.  Petitioner was not charged, nor was the jury instructed, on the lesser base-level offense of simple possession of laboratory equipment.  The verdict form did on its face purport to instruct the jury on the elements of the crime, nor did the trial court so instruct the jury.  Rather, the court instructed the jury that, "[t]o assist you in returning your verdict, we are furnishing you with this document, which is entitled "Form of the Verdict", which selects – you mark only one box on each charge or count.  Return only one verdict on each count, and therefore, on the four possible counts – not the four possible

13

counts, the four counts, each with possible verdicts, not guilty or guilty." Trial Tr., Vol. IV, at 61. The court's instructions regarding the use of the form coupled with the court's instructions on the elements of the offense would not have lead the jury to believe that the prosecution did not have to establish the geographic element of the crime, nor does the verdict form evince that the jury found him guilty for the base-level offense, which was not charged against petitioner and on which the jury was not instructed.

The court's decision in *United States v. Valencia-Amezcua*, 278 F.3d 901, 910-11 (9th Cir. 2002), is instructive. In that case, the defendant was charged with manufacturing over 500 grams of methamphetamine. The defendant argued on appeal that the jury's verdict was insufficient to establish the quantity element of the offense because the verdict form did not state the quantity element. The court rejected this claim, explaining that the defendant was charged only with manufacturing over 500 grams and the jury was explicitly instructed that, to establish the defendant's guilt, the prosecution had to prove this quantity beyond a reasonable doubt. In light of these facts, "[w]hen the jury found [the defendant] guilty of Count 1, it necessarily found beyond a reasonable doubt that [the defendant] was guilty of manufacturing more than 500 grams of methamphetamine." *Id.* at 911. Similarly, in *People v. Clyburn*, 55 Mich. App. 454, 460-61, 222 N.W.2d 775, 778 (1974), the defendant was charged with felony of breaking and entering a business place with intent to commit a larceny. The court rejected the defendant's argument that he was not properly convicted of the felony, and was only convicted of the lesser misdemeanor of simple breaking and entering a business, because the verdict form did not include the intent language. The court reasoned that "[t]he defendant was not charged with the misdemeanor, the judge did not instruct as to it, nor was such an instruction requested by the defense counsel. . . .

14

The language used by the jury can only be interpreted to mean that they found the defendant guilty of breaking and entering with intent to commit larceny as charged.  The jury was not required to restate all of the statutory language when rendering the verdict.").

Here, as in *Valencia-Amezcua*, petitioner was charged only with possession of laboratory equipment within 500 feet of a residence, and the jury was explicitly instructed that, to find petitioner guilty, it had to find beyond a reasonable doubt that petitioner's possession occurred within 500 feet of a residence.  In these circumstances, when the jury found petitioner guilty of Count 2 it necessarily found beyond a reasonable doubt that petitioner possessed the laboratory equipment within 500 feet of a residence, notwithstanding the omission of this language from the jury form.  *See Valencia-Amezcua*, 278 F.3d at 911.  And, as in *Clyburn*, petitioner here was not charged with the lesser base-level offense of simple possession of laboratory equipment, the jury was not instructed on this charge, and petitioner did not request such an instruction.  Thus, notwithstanding the language of the verdict form, the jury's verdict "can only be interpreted to mean that the found [petitioner] guilty of [possessing laboratory equipment within 500 feet of a residence] as charged." *Clyburn*, 55 Mich. App. at 461, 222 N.W.2d at 778; *see also*, *Odell v. Knowles*, No. 03-0763, 2005 WL 2072014, at *3 (E.D. Cal. Aug. 25, 2005) (jury properly found petitioner guilty of enhancement for intentionally discharging a firearm causing serious bodily injury notwithstanding absence of serious bodily injury language from jury form, where jury was instructed on that element and there was no dispute that serious bodily injury, in fact, resulted); *People v. Combs*, 69 Mich. App. 711, 719, 245 N.W.2d 338, 342 (1976) (reaching same conclusion as *Clyburn* on similar facts).

Thus, under either federal or Michigan law, petitioner was properly convicted of possessing

15

laboratory equipment within 500 feet of a residence, and counsel had no basis in law for challenging the sufficiency of the verdict form before it was given to the jury or the sufficiency of the jury's verdict after it was rendered. Thus, petitioner cannot show that his trial counsel was ineffective for failing to object to the form or challenge his sentence, and he cannot show that his appellate counsel was ineffective for failing to raise these issues on appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### b. Denial of Counsel at Critical Stage

Petitioner also suggests that he was denied his right to counsel at a critical stage of the proceedings, namely, the reading of the verdict. At the reading of the verdict, petitioner's counsel was not present. Rather, the cousin and associate of petitioner's counsel stood-in for the reading of the verdict. *See* Trial Tr., Vol. IV, at 63. Petitioner contends that this resulted in a denial of counsel in violation of the Sixth Amendment. The Court should disagree.

There is no question that the reading of the jury's verdict is a "critical stage" of the proceedings to which the Sixth Amendment right to counsel attaches. *See Van v. Jones*, 475 F.3d 292, 299 (6th Cir. 2007); *United States v. Smith*, 411 F.2d 733, 736 (6th Cir. 1969). However, petitioner was not denied counsel at the reading of the verdict. Rather, petitioner had stand-in counsel that was present to challenge any problems arising from the rendering of the verdict. *See United States v. Clayton*, 418 F.2d 1274, 1276 (6th Cir. 1969); *cf. United States v. Dykes*, 460 F.2d 324, 324-25 (9th Cir. 1972). It is true that the defendants in *Clayton* and *Dykes* expressly consented to substitute counsel standing in for trial counsel, and that petitioner did not do so here. But petitioner voluntarily absented himself from the proceedings by absconding during the middle

16

of trial, effecting a waiver of his own right to be present. *See Taylor v. United States*, 414 U.S. 17, 19-20 (1973) (per curiam); *Clark v. Scott*, 70 F.3d 386, 389-90 (5th Cir. 1995). Petitioner cannot now complain that he was not given the opportunity to object to counsel's law partner standing in for the mostly ministerial task of reading the jury's verdict.

Second, even if the absence of trial counsel and the presence of stand-in counsel amounted to a violation of petitioner's right to counsel at a critical stage, the violation was harmless. Although not all denials of counsel at a critical stage are subject to harmless error analysis, a claim that counsel was not present at the reading of the jury's verdict is subject to harmless error analysis. *See United States v. Morrison*, 946 F.2d 484, 503-04 (7th Cir. 1991); *United States v. Osterbrock*, 891 F.2d 1216, 1218 (6th Cir. 1989). Here, petitioner does not identify any harm from the absence of his counsel at the reading of the verdict. Petitioner suggests that, had counsel been present, he could have objected to the jury form. However, stand-in counsel equally could have done so. *See Williams v. Director of California Dep't of Corrections*, No. 05-1222, 2008 WL 2080908, at *10 (E.D. Cal. May 15, 2008). In any event, the jury form was composed and submitted to the jury before their deliberations began, when counsel was still present, and as explained above there was no basis on which counsel could have challenged the verdict form or the sufficiency of the jury's verdict.

In these circumstances, petitioner was not denied his right to counsel at a critical stage of the proceedings and, even if he was, the absence of counsel was harmless. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an

17

unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives_____
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

18

Dated: 7/31/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 31, 2009.

s/Eddrey Butts
Case Manager

19